# Illinois Official Reports

## Appellate Court

***G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.*,**
**2016 IL App (1st) 160369**

| | |
|---|---|
| Appellate Court Caption | G3 ANALYTICS, LLC and KEN ELDER, Plaintiffs-Appellants, v. HUGHES SOCOL PIERS RESNICK & DYM LTD., a Limited Liability Partnership, and COHEN LAW GROUP P.C., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-16-0369 |
| Filed | November 8, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-5709; the Hon. Anna Helen Demacopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel F. Konicek, Amir R. Tahmassebi, and Andrew M. Cook, of Konicek & Dillon, P.C., of Geneva, for appellants.<br><br>Matthew J. Piers, Joshua Karsh, and Kate E. Schwartz, of Hughes Socol Piers Resnick & Dym Ltd., of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiffs, G3 Analytics and Ken Elder, hired two Chicago law firms to investigate and prosecute potential claims under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)) and the federal False Claims Act (31 U.S.C. § 3729 *et seq.* (2012)). After the defendants spent several months investigating the claims, plaintiffs terminated the relationship. When plaintiffs did not pay the legal fees which defendants billed them, defendants demanded mediation under the alternative dispute resolution (ADR) provision of the fee agreement. Plaintiffs refused to participate in mediation and instead sought a declaratory judgment that the fee agreement was unenforceable. Defendants moved to dismiss. In response, plaintiffs contended that Illinois law governed the fee agreement and under Illinois law, a trial court, rather than an arbitrator, decides the issue of the agreement's enforceability. The trial court disagreed and dismissed the action, finding that federal law, rather than Illinois law, governed the ADR provision due to the fee agreement's ties to interstate commerce. We agree with the trial court's reasoning, and affirm.

¶ 2                                          BACKGROUND

¶ 3     Plaintiffs are in the business of identifying, developing, and filing *qui tam* lawsuits—claims to combat fraud using state and federal false claims statutes. Plaintiffs who bring *qui tam* claims, if successful, may receive a share of the recovery. In January 2014, plaintiffs, a Michigan limited liability company and a Michigan resident, retained defendants, Chicago law firms Hughes Socol Piers Resnick & Dym Ltd. and Cohen Law Group P.C., to jointly investigate claims under the False Claims Act in multiple states for improper practices by certain financial institutions. The parties signed a written fee agreement in March 2014.

¶ 4     The fee agreement contains three provisions relevant to our determination: (i) the client withdrawal provision, which states, in part, "In the event our Law Firms are willing to proceed with the *** Litigation and you determine to withdraw, you agree to pay our Law Firms for all costs and expenses we have incurred, plus fees incurred to the date of your withdrawal"; (ii) the choice of law provision, which states, "Subject to the terms of the Alternative Dispute Resolution provision, this Agreement will be governed by the laws of the State of Illinois"; and (iii) the ADR provision, which states:

> "Alternative Dispute Resolution: Any disputes relating to this Agreement, and any disputes relating to the action contemplated by this Agreement, including the services provided in the action, will be resolved by alternative dispute resolution. Alternative dispute resolution means that you and our Law Firms agree to submit all disputes to an independent mediator mutually agreed upon. If you and our Law Firms are unable to mutually agree to the selection of a mediator, a mediator will be chosen by JAMS/ENDISPUTE. In the event the parties are unable to resolve their disputes through mediation, the parties agree that the mediator shall require the parties to submit their disputes to an independent arbitrator selected by the mediator. The mediator will have the right to appoint himself as arbitrator in that proceeding. The parties shall be bound by the decision of the arbitrator and such decision shall be final and not subject to review except as the issue of malfeasance or bias on the part of the arbitrator. The decision of the arbitrator may be enforced in any court of competent

jurisdiction. You and our Law Firms agree to equally share the cost of mediation and, if necessary, arbitration."

¶ 5 Between January and August 2014, defendants investigated and evaluated the viability of filing the False Claims Act claims. In August 2014, plaintiffs ended defendants' representation. Defendants sent plaintiffs a bill for their time and expenses. When plaintiffs would not pay, defendants demanded mediation under the fee agreement's ADR provision. Mediation was scheduled and continued on a number of occasions before plaintiffs filed a complaint for declaratory judgment. Specifically, plaintiffs contended that (i) the fee agreement was not binding in the absence of an arm's-length bargaining process, (ii) the fee agreement became unenforceable when plaintiffs terminated defendants' representation, (iii) the ADR provision violated public policy by not allowing plaintiffs to engage in discovery and depriving them of access to critical information necessary to file a cause of action, and (iv) the ADR provision became unenforceable by allowing the mediator to appoint himself or herself as arbitrator.

¶ 6 Defendants filed a combined motion to dismiss and to compel arbitration under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)), arguing that the complaint should be dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) for failing to allege any cognizable basis for challenging or avoiding the agreement's ADR provision and for failing to sufficiently plead facts rather than conclusions. Defendants also sought dismissal under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)), because the agreement provides that ADR is the exclusive remedy and thus, constitutes an "affirmative matter avoiding the legal effect of or defeating the claim."

¶ 7 Defendants asserted that the Federal Arbitration Act (9 U.S.C. § 2 (2012)) applies, which requires an arbitrator to determine whether the agreement is enforceable. In a surreply, plaintiffs argued that under the fee agreement's choice of law provision, Illinois law applies, and under section 2 of the Uniform Arbitration Act (710 ILCS 5/2 (West 2014)), a court, and not an arbitrator, determines whether a contract to arbitrate exists.

¶ 8 After a hearing, the trial court dismissed plaintiffs' complaint. First, the trial court found that the plain language of the fee agreement does not apply Illinois law to the ADR provision. Specifically, the court noted that the choice of law provision states that it is "subject to the terms of the Alternative Dispute Resolution provision." The court said, "the crux of this motion is an issue regarding the language in this agreement ***. [T]he language says except for the alternative dispute resolution provision, Illinois law will apply. So [the agreement] *** contemplates that the dispute resolution trumps it ***. So in the end, I think it comes down to the language."

¶ 9 The trial court also found that the fee agreement involves interstate commerce because plaintiffs reside in Michigan, defendants are located in Chicago, and the agreement contemplated possible False Claims Act claims in several states. The trial court concluded that given the interstate commerce nature of the fee agreement and the absence of language stating the appropriateness of Illinois arbitration rules, the Federal Arbitration Act applies. The Federal Arbitration Act provides that the enforceability of a contract containing an arbitration clause is an issue reserved for arbitrators, not courts. Thus, the trial court granted defendants' motion to dismiss the complaint and compel arbitration.

¶ 10                                    ANALYSIS

¶ 11       Section 2-619.1 of the Code of Civil Procedure is a combined motion that incorporates sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-619.1, 2-615, 2-619 (West 2010). "[W]e accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party." *Balmoral Racing Club, Inc. v. Gonzales*, 338 Ill. App. 3d 478, 484 (2003). We review *de novo* a trial court's dismissal of a complaint under section 2-619.1 of the Code.

¶ 12       The lone issue we address is whether Illinois law, specifically, the Uniform Arbitration Act (Arbitration Act) or the Federal Arbitration Act (FAA) governs the ADR provision in the fee agreement. Under section 2(a) of the Arbitration Act, when an "opposing party denies the existence of the agreement to arbitrate," a "court shall proceed summarily to the determination of the issue." 710 ILCS 5/2(a) (West 2014). Under the FAA, however, there is a presumption in favor of arbitration and disputes over the enforceability of a contract are decided by the arbitrator. 9 U.S.C. § 2 (2012).

¶ 13       Plaintiffs are correct in asserting that courts have held that when parties to a contract select Illinois law as the governing law, Illinois law applies to all provisions of the contract, including the arbitration provision. See *Glazer's Distributors of Illinois v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411 (2007). Courts also have held that where parties to a contract agree to arbitrate in accordance with state law, the FAA does not apply, even when involving interstate commerce. See *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214 (2008); see also *Glazer's*, 376 Ill. App. 3d at 421 (citing *Yates v. Doctor's Associates, Inc.*, 193 Ill. App. 3d 431, 438 (1990)).

¶ 14       Plaintiffs contend that the fee agreement's choice of law provision applies to the entire agreement, including the ADR provision, even though the case involves interstate commerce. For support, plaintiffs cite *Glazer's*, 376 Ill. App. 3d 411, and *Yates*, 193 Ill. App. 3d 431. In both cases, the contracts included a blanket choice of law provision that plainly applied to the entire agreement. Conversely, here, the choice of law provision states that it is "subject to the terms of the Alternative Dispute Resolution provision." Thus, we must determine if the "subject to" language precludes application of Illinois law to the ADR provision.

¶ 15       The terms of a contract must be given their plain, ordinary, popular, and natural meaning. *Village of Glenview v. Northfield Woods Water & Utility Co.*, 216 Ill. App. 3d 40, 48 (1991). Whether an ambiguity exists presents a question of law for the trial court to decide. *Id.* There is no ambiguity if a court can ascertain a contract's meaning from its general language. Disagreement among the parties as to the meaning of terms does not render a contract ambiguous. *Id.* Absent an ambiguity, " 'the intention of the parties *** must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties.' " (Emphasis omitted.) *Id.* at 48-49 (quoting *Lenzi v. Morkin*, 103 Ill. 2d 290, 293 (1984)). "The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by.' " *Engelstein v. Mintz*, 345 Ill. 48, 61 (1931). Thus, as the choice of law provision has been made "subordinate to" the ADR provision, Illinois law does not *automatically* apply.

¶ 16       Next, because the ADR provision is silent as to what law does apply, we must consider whether the trial court was correct in applying federal law. Plaintiffs assert that without language in the ADR provision stating whether Illinois or federal law applies, the trial court

should have applied Illinois law, particularly in light of the choice of law provision. We disagree.

¶ 17　　The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce. *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 28. The fee agreement was between parties from different states and contemplated potential False Claims Act litigation, under both state and federal law, in multiple jurisdictions. Because the fee agreement involves interstate commerce, the FAA, not Illinois law, governs.

¶ 18　　Moreover, when a party challenges the enforceability of a contract as a whole, as opposed to the arbitration provision alone, the issue of the contract's validity proceeds to arbitration rather than in another forum, whether judicial or administrative. *LRN Holding, Inc. v. Windlake Capital Advisors, LLC*, 409 Ill. App. 3d 1025, 1031-32 (2011) (citing *Preston v. Ferrer*, 552 U.S. 346 (2008)). In *LRN*, the plaintiffs argued that their agreement with the defendant broker was void *ab initio*, because defendant was not a properly registered broker with the state as required by Illinois law. *Id.* at 1027. Plaintiffs argued that the trial court must determine whether any contract existed before the matter could be submitted to arbitration under the agreement's arbitration provision, which mandated any controversy between the parties relating to the agreement be resolved by binding arbitration. *Id.* at 1028. This court ruled against plaintiffs, relying on *Preston*, in which the United States Supreme Court stated that a "recurring question under [section] 2 [of the FAA] is who should decide whether 'grounds *** exist at law or in equity' to invalidate an arbitration agreement." *Preston*, 552 U.S. at 353 (quoting 9 U.S.C. § 2 (2000)). The Court noted that a party may bring one of two types of challenges—either to the contract as a whole or the arbitration clause specifically. *Id.* at 353-54. Affirming holdings in earlier cases, the Court stated "When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Id.* at 359. Based on *Preston*, the *LRN* court found that because the plaintiffs did not attack the arbitration provision specifically but sought to invalidate the entire contract, the dispute between the parties would proceed to arbitration. *LRN*, 409 Ill. App. 3d at 1031-32. Similarly, plaintiffs filed a declaratory judgment action arguing that the entire fee agreement was invalid, and, accordingly, the question of its enforceability must be decided by an arbitrator and not a court.

¶ 19　　Affirmed.